UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT HELD,

Plaintiff,

v.                                      Case No.: 1:25-cv-13066

VILLAGE OF BROADVIEW, an Illinois municipal corporation; KATRINA THOMPSON, in her official capacity as Mayor of the Village of Broadview; and THOMAS MILLS, in his official capacity as Chief of Police of the Village of Broadview,

Defendants.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND DAMAGES UNDER 42 U.S.C. § 1983**

**NATURE OF THE ACTION**

1) This is a civil rights action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Executive Order No. 2025-01, enacted by the Village of Broadview on October 6, 2025. The Executive Order prohibits protest activity at the Immigration and Customs Enforcement Processing Facility in Broadview, Illinois, during 15 of the 24 hours in each day—specifically, from 6:00 p.m. to 9:00 a.m. Plaintiff brings both facial and as-applied challenges to this Executive Order under the First Amendment to the United States Constitution.

2) On October 6, 2025, at approximately 7:49 a.m., Plaintiff was engaged in peaceful, solitary protest activity on a public sidewalk in the designated protest zone near the ICE facility when he was approached by Broadview police officers. The officers informed Plaintiff that he was violating the Executive Order by protesting prior to 9:00 a.m. and ordered him to disperse.

1

When Plaintiff declined to leave, asserting his constitutional right to engage in peaceful protest, he was issued Citation No. VO 115933 for alleged disorderly conduct under Broadview Ordinance 15-10-1D.

3) Plaintiff's conduct was neither disorderly nor criminal. He stood peacefully in a public area, engaged in constitutionally protected expression. The citation for "disorderly conduct" was pretextual—a mechanism to enforce an unconstitutional time restriction on First Amendment activity.

4) Executive Order No. 2025-01 violates the First Amendment both on its face and as applied to Plaintiff because it: (a) fails narrow tailoring by imposing a blanket prohibition on protest for the majority of each day regardless of any demonstrable threat to public safety; (b) forecloses ample alternative channels of communication by prohibiting access during critical morning and evening hours when working citizens can exercise their First Amendment rights and when the intended audience is most accessible; and (c) vests standardless discretion in the Mayor to rescind the Order "should [she] deem the restriction no longer necessary," creating the very unbridled discretion condemned by the Supreme Court in *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992).

5) Plaintiff seeks declaratory relief that Executive Order No. 2025-01 is unconstitutional, preliminary and permanent injunctive relief prohibiting its enforcement, nominal damages for the violation of his constitutional rights, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

6) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction). Plaintiff's claims arise under the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and are brought pursuant to 42 U.S.C. § 1983.

7) This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 and to award damages and grant injunctive relief pursuant to 42 U.S.C. § 1983.

8) Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because: (a) Defendants reside in this judicial district; (b) a substantial part of the events giving rise to Plaintiff's claims occurred in this district; and (c) Defendants are subject to personal jurisdiction in this district.

## PARTIES

9) Plaintiff Robert Held is a resident of Cook County, Illinois, and a practicing attorney licensed in the State of Illinois. At all times relevant to this action, Plaintiff has been engaged in constitutionally protected speech and assembly relating to immigration enforcement at the ICE Processing Facility in Broadview, Illinois.

10) Defendant Village of Broadview is an Illinois municipal corporation with the power to be sued and to defend lawsuits. The Village is located in Cook County, Illinois, within this judicial district.

11) Defendant Katrina Thompson is sued in her official capacity as Mayor of the Village of Broadview. Mayor Thompson enacted Executive Order No. 2025-01 and retains authority to rescind or modify it. At all times relevant to this action, Mayor Thompson acted under color of state law.

12) Defendant Thomas Mills is sued in his official capacity as Chief of Police of the Village of Broadview. Chief Mills is responsible for enforcing Village ordinances and executive orders, including Executive Order No. 2025-01. At all times relevant to this action, Chief Mills and officers under his supervision acted under color of state law.

## ALLEGATIONS OF FACT

### Background: Protests at the Broadview ICE Facility

13) Beginning in September 2025, citizens exercised their First Amendment rights to protest immigration enforcement policies at the ICE Processing Facility located at 1930 Beach Street, Broadview, Illinois.

14) These protests have involved individuals and groups expressing their views on immigration policy, federal law enforcement practices, and related matters of profound public concern.

15) Prior to October 6, 2025, there were no time restrictions on when citizens could engage in peaceful protest activity in the public areas adjacent to the ICE facility.

### Enactment of Executive Order No. 2025-01

16) On October 6, 2025, Mayor Katrina Thompson issued Executive Order No. 2025-01 (the "Executive Order"), which states in relevant part:

> Effective immediately this 6th day of October 2025, the Village is setting the hours that people can protest or gather at the ICE Processing Facility located at 1930 Beach Street, Broadview, Illinois and the designated protest area of 2000 South 25th Avenue, Broadview Illinois as 9:00 am to 6:00 pm CST; however, said order may be rescinded should I deem the restriction no longer necessary in order to protect the health, welfare, and safety of the residents of the Village.

17) The Executive Order prohibits all protest activity—regardless of size, nature, or circumstances—outside the hours of 9:00 a.m. to 6:00 p.m. Central Standard Time.

18) The Executive Order thus prohibits protest activity for 15 hours of each day: from 6:00 p.m. until 9:00 a.m. the following day.

19) The Executive Order applies regardless of whether any specific safety concern exists at any particular time, and regardless of whether the proposed protest activity poses any threat to public safety, property, or the orderly flow of traffic.

20) The Executive Order reserves to Mayor Thompson unfettered discretion to rescind the time restrictions whenever she personally "deem[s] the restriction no longer necessary."

21) The Executive Order provides no standards, criteria, or guidelines to govern the Mayor's exercise of this discretion.

22) The Executive Order does not require notice, explanation, or any opportunity for public participation before the Mayor exercises her discretion to rescind or reinstate time restrictions.

**Plaintiff's October 6, 2025, Protest and Citation**

23) On October 6, 2025, at approximately 7:49 a.m., Plaintiff Robert Held stood peacefully in the designated protest area on Beach Street near the ICE Processing Facility.

24) Plaintiff was alone. He was not part of a large gathering, or any gathering, and he was not causing any disruption, obstruction, or threat to public safety.

25) Plaintiff was standing quietly.

26) At approximately 7:49 a.m., two Broadview police officers approached Plaintiff. One officer was Lieutenant Florentino; the other was identified as "Star 95."

27) Lieutenant Florentino informed Plaintiff that protest hours were restricted to 9:00 a.m. to 6:00 p.m. pursuant to the Executive Order and that Plaintiff was required to disperse immediately.

28) Plaintiff asked Lieutenant Florentino if he would mind being recorded and when the officer consented, Plaintiff began recording video on his personal device.

29) Plaintiff stated to the officers that he understood the Executive Order's protest times and that they were ordering him to leave but that he would not leave because he has a constitutional right to protest.

30) Lieutenant Florentino stated: "Like I said, the first order of business is we're going to give you a dispersal order and if you fail to do that a citation will be issued to you..."

31) Plaintiff informed the officers that they could issue the citation immediately, as he was not going to disperse.

32) The officers then walked Plaintiff to their patrol vehicle and issued him Citation No. VO 115933.

33) The citation cites Broadview Ordinance 15-10-1D, which pertains to disorderly conduct.

34) Broadview's Ordinance 15-10-1D defines disorderly conduct as occurring when a person "knowingly... [f]ails to obey a lawful order of dispersal by a person known by him to be a police officer under circumstances which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm; or assembles for the purpose of using force or violence to disturb the public peace;".

6

35) Plaintiff's conduct was not likely to cause substantial harm or serious inconvenience, annoyance or alarm; or assemblies for the purpose of using force or violence to disturb the public peace.

36) Plaintiff was not engaged in violence or using force and was not engaging in any conduct that Broadview law recognizes as disorderly.

37) The citation for disorderly conduct was a pretext. The sole basis for the officers' interaction with Plaintiff and the issuance of the citation was Plaintiff's presence in the protest zone before 9:00 a.m. in violation of the Executive Order.

### Plaintiff's Attempts to Obtain Administrative Relief

38) On October 13, 2025, Plaintiff served the Village of Broadview with a Motion to Dismiss Citation No. VO 115933, arguing that the Executive Order violates the First Amendment and requesting dismissal of the citation and an expedited hearing.

39) Plaintiff's Motion to Dismiss was delivered via Certified Mail and was received by the Village, as confirmed by United States Postal Service tracking records.

40) The Village of Broadview has not responded to Plaintiff's Motion to Dismiss.

41) The Village has not scheduled a hearing on the Motion to Dismiss.

42) On October 20, 2025, Plaintiff hand-delivered a follow-up letter to the Village requesting a hearing date on his Motion to Dismiss.

43) The Village has not responded to this follow-up letter.

44) Plaintiff has telephoned the Broadview Police Department twice to inquire about the status of his Motion to Dismiss and request for a hearing.

45) On October 22, 2025, Plaintiff sent a follow up letter to the Village of Broadview enclosing his Motion to Dismiss and request for a hearing.

46) The Village has provided no substantive response to any of these inquiries.

47) As of the date of filing this Complaint, the Village has neither acknowledged Plaintiff's motion, scheduled a hearing, nor taken any action to adjudicate Plaintiff's constitutional claims.

**Plaintiff's Ongoing Interest in Protest Activity**

48) Plaintiff desires to continue engaging in peaceful protest activity at the ICE Processing Facility in Broadview to express his views on immigration enforcement, civil liberties, and related matters of public concern.

49) Plaintiff desires to engage in protest activity during morning hours before 9:00 a.m. and evening hours after 6:00 p.m., including during the hours currently prohibited by the Executive Order.

50) Plaintiff is chilled from exercising his First Amendment rights during these hours by the threat of citation, arrest, and prosecution under the Executive Order and Broadview's enforcement of it.

51) Absent declaratory and injunctive relief from this Court, Plaintiff will continue to suffer ongoing violations of his First Amendment rights.

**LEGAL STANDARD: FIRST AMENDMENT TIME, PLACE, AND MANNER RESTRICTIONS**

52) Content-neutral restrictions on the time, place, or manner of protected speech are permissible under the First Amendment only if they: (1) are content-neutral; (2) are narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *McCullen v. Coakley*, 573 U.S. 464, 477 (2014).

8

53) Even content-neutral restrictions must satisfy each prong of this three-part test. Failure to satisfy any prong renders the restriction unconstitutional.

54) "Narrow tailoring" does not require the government to employ the least restrictive means, but the restriction must "promote[] a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799.

55) A regulation is not narrowly tailored if "a substantial portion of the burden on speech does not serve to advance [the government's] goals." *Id*.

56) The "ample alternative channels" requirement is not satisfied merely because some means of communication remain open. The restriction must not foreclose the speaker's ability to reach the intended audience at times when that communication would be most effective. *McCullen*, 573 U.S. at 488-89.

57) An ordinance or executive order that vests standardless discretion in a government official violates the First Amendment regardless of whether the regulation is content-neutral. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992).

58) Standardless discretion creates an impermissible risk that the official will favor certain viewpoints and disfavor others "through the arbitrary application of fees" or other conditions. *Id*.

## COUNT I

### FACIAL CHALLENGE TO EXECUTIVE ORDER NO. 2025-01

### VIOLATION OF THE FIRST AMENDMENT

### (42 U.S.C. § 1983)

59) Plaintiff incorporates by reference all preceding paragraphs.

60) The First Amendment to the United States Constitution, made applicable to the states and their political subdivisions through the Fourteenth Amendment, protects the right of citizens to engage in speech, assembly, and petition for redress of grievances.

61) Protest activity on matters of public concern, including immigration enforcement and federal law enforcement policies, is speech at the core of the First Amendment's protections.

62) Public sidewalks and areas adjacent to government facilities are traditional public forums entitled to the highest degree of First Amendment protection. *McCullen*, 573 U.S. at 476.

## The Executive Order Is Not Narrowly Tailored

63) Executive Order No. 2025-01 imposes a blanket prohibition on all protest activity for 15 hours of each day—from 6:00 p.m. to 9:00 a.m.—regardless of the nature, size, or impact of the proposed activity.

64) The Executive Order applies even to a single individual standing peacefully, as occurred in this case.

65) The Executive Order provides no exception for peaceful, non-disruptive protest activity that poses no threat to public safety, traffic flow, or property.

66) The Executive Order does not require any showing that a specific protest poses any particular risk before the time restriction is enforced.

67) The blanket prohibition on protest for the majority of each day—15 out of 24 hours, or 62.5% of each day—is not narrowly tailored to serve any governmental interest.

68) If the Village's concern is safety or order, it can address those concerns through content-neutral regulations that respond to actual safety risks: limiting the size of gatherings at

particular times, requiring permits for large assemblies, imposing reasonable noise restrictions, or prohibiting obstruction of sidewalks or roadways.

69) A categorical prohibition on all expressive activity for 62.5% of each day, regardless of whether any safety concern exists, is not "narrowly tailored" under First Amendment doctrine. It is the definition of a restriction that sweeps far more broadly than necessary to achieve any legitimate governmental interest.

70) The Supreme Court has consistently invalidated blanket prohibitions on protected speech when more tailored alternatives are available. *See McCullen*, 573 U.S. at 490 ("[T]he buffer zones burden substantially more speech than necessary to achieve the Commonwealth's asserted interests.").

71) A substantial portion of the burden imposed by the Executive Order—prohibiting peaceful, non-disruptive speech by individuals like Plaintiff—does not serve to advance any governmental interest in safety, order, or property protection.

72) The Executive Order therefore fails the narrow tailoring requirement and is unconstitutional on its face.

**The Executive Order Forecloses Ample Alternative Channels**

73) By prohibiting protest from 6:00 p.m. to 9:00 a.m., the Executive Order forecloses access to critical hours when protest activity would be most effective and when citizens who work traditional employment hours (such as 9:00 a.m. to 5:00 p.m.) could exercise their First Amendment rights.

74) Morning hours before 9:00 a.m. are essential for reaching the general public during their daily routines.

75) Evening hours after 6:00 p.m. are the only times when many working citizens can engage in protest activity without sacrificing employment obligations.

76) The prohibition on evening and early morning protest effectively denies a significant segment of the population any opportunity to engage in protected expression at the ICE facility.

77) Protest activity is inherently time-sensitive and depends on the ability to reach the intended audience when they are present and receptive to the message. The Supreme Court has recognized that being "seen and heard" is insufficient if the speaker cannot engage in the manner most effective for conveying the message. *McCullen*, 573 U.S. at 489 ("It is thus no answer to say that petitioners can still be seen and heard by women within the buffer zones."); *id*. at 490 ("It is easier to ignore a strained voice or a waving hand than a direct greeting or an outstretched arm.").

78) The Supreme Court has recognized that foreclosing access to key times when the intended audience is present violates the "ample alternative channels" requirement. *See id*. at 477.

79) The Executive Order's time restrictions do not leave open ample alternative channels for communication. They foreclose the most effective channels for reaching the intended audience and exclude citizens who work during the permitted hours.

80) The Executive Order therefore fails the "ample alternative channels" requirement and is unconstitutional on its face.

### The Executive Order Vests Standardless Discretion in the Mayor

81) Executive Order No. 2025-01 provides that the time restrictions "may be rescinded should [the Mayor] deem the restriction no longer necessary in order to protect the health, welfare, and safety of the residents of the Village."

82) This provision vests the Mayor with unfettered discretion to decide when and whether to permit protest activity outside the 9:00 a.m. to 6:00 p.m. window.

83) The Executive Order provides no standards, criteria, or guidelines to govern the Mayor's decision.

84) The Executive Order does not require the Mayor to articulate reasons for her decision.

85) The Executive Order does not provide any mechanism for review or appeal of the Mayor's decision.

86) The Executive Order does not require any public notice, comment, or participation in the Mayor's decision-making process.

87) This is precisely the type of "standardless discretion" that the Supreme Court has condemned as facially unconstitutional. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992) ("Nothing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees.").

88) In *Forsyth County*, the Supreme Court held that an ordinance granting a county administrator discretion to set permit fees based on security costs violated the First Amendment because the administrator had no "narrowly drawn, reasonable, and definite standards" to guide his discretion. *Id*. at 133.

89) The Court explained: "The decision how much to charge for police protection or administrative time—or even whether to charge at all—is left to the whim of the administrator. There are no articulated standards either in the ordinance or in the county's established practice. The administrator is not required to rely on any objective factors. He need not provide any explanation for his decision, and that decision is unreviewable." *Id*. at 133.

90) Executive Order No. 2025-01 suffers from the identical constitutional defect identified in *Forsyth County*.

91) The Mayor's standardless discretion to rescind the time restrictions—or to leave them in place—creates an impermissible risk that she will exercise that discretion based on the content or viewpoint of the speech at issue.

### The Executive Order's reservation of standardless discretion renders it unconstitutional on its face.

92) As a result of the Executive Order's failure to satisfy the requirements of narrow tailoring, ample alternative channels, and prohibition on standardless discretion, Executive Order No. 2025-01 is unconstitutional on its face and cannot be enforced against any person.

### COUNT II

### AS-APPLIED CHALLENGE TO EXECUTIVE ORDER NO. 2025-01

### VIOLATION OF THE FIRST AMENDMENT

### (42 U.S.C. § 1983)

93) Plaintiff incorporates by reference all preceding paragraphs.

94) Even if Executive Order No. 2025-01 were not facially unconstitutional—which it is—the Executive Order is unconstitutional as applied to Plaintiff's conduct on October 6, 2025.

95) Plaintiff was engaged in peaceful, solitary protest activity on a public sidewalk in the designated protest area.

96) Plaintiff posed no threat to public safety, caused no obstruction to traffic or pedestrians, created no excessive noise, and engaged in no disruptive conduct.

97) There was no governmental interest—significant or otherwise—that justified prohibiting Plaintiff's speech at 7:49 a.m. on October 6, 2025.

98) Enforcing the Executive Order against Plaintiff's peaceful, non-disruptive conduct served no governmental purpose and imposed a substantial burden on core First Amendment activity.

99) The application of the Executive Order to Plaintiff was not narrowly tailored to any legitimate governmental interest because there was no governmental interest implicated by Plaintiff's conduct.

100) The application of the Executive Order to Plaintiff foreclosed his ability to engage in protest during the most effective time for reaching his intended audience and the only time available given his professional obligations.

101) The enforcement of the Executive Order against Plaintiff violated his First Amendment rights as protected by 42 U.S.C. § 1983.

## COUNT III

## RETALIATORY ENFORCEMENT IN VIOLATION OF THE FIRST AMENDMENT
## (42 U.S.C. § 1983)

102) Plaintiff incorporates by reference all preceding paragraphs.

103) The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

104) On October 6, 2025, Plaintiff was engaged in constitutionally protected speech: peaceful protest activity on a matter of profound public concern in a traditional public forum.

105) Broadview police officers, acting under the authority of the Executive Order and under color of law, confronted Plaintiff and ordered him to cease his protected activity and leave the area.

106) When Plaintiff declined to abandon his protected speech and asserted his constitutional right to protest, the officers cited him for "disorderly conduct."

107) Plaintiff's conduct was not disorderly under Broadview law. 15-10-1D requires that a person "knowingly... [f]ail[] to obey a lawful order of dispersal by a person known by him to be a police officer under circumstances which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm; or assembles for the purpose of using force or violence to disturb the public peace".

108) Plaintiff stood peacefully expressing his views. He did not inconvenience, annoy or alarm anyone. He did not assemble for the purpose of using force or violence to disturb the public peace.

109) The issuance of the citation for "disorderly conduct" was pretextual. The officers had no probable cause to believe Plaintiff committed disorderly conduct under Broadview law.

110) The officers cited Plaintiff because he refused to cease engaging in protected speech.

111) The citation was issued in retaliation for Plaintiff's exercise of his First Amendment rights.

112) The retaliatory citation chilled and continues to chill Plaintiff's willingness to engage in protected speech outside of the hours of 9:00 am to 6:00 pm, in violation of the First Amendment.

113) Defendants' retaliatory enforcement violated Plaintiff's clearly established constitutional rights under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Held respectfully requests that this Court:

**A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that:**

(1) Executive Order No. 2025-01 is unconstitutional on its face under the First Amendment to the United States Constitution;

(2) The enforcement of Executive Order No. 2025-01 against Plaintiff on October 6, 2025, violated Plaintiff's rights under the First Amendment; and

(3) Citation No. VO 115933 was issued in violation of Plaintiff's First Amendment rights and is void.

**B. Enter a preliminary injunction:**

(1) Enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them from enforcing Executive Order No. 2025-01 against Plaintiff or any other person; and

(2) Enjoining Defendants from prosecuting Plaintiff on Citation No. VO 115933 or taking any action to enforce that citation.

**C. After trial on the merits, enter a permanent injunction:**

(1) Permanently enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them from enforcing Executive Order No. 2025-01 or any substantially similar time restriction on protest activity at the ICE Processing Facility in Broadview; and

(2) Permanently enjoining Defendants from prosecuting or enforcing Citation No. VO 115933.

**D. Award Plaintiff nominal damages in the amount of $1.00 for the violation of his constitutional rights.**

E. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

F. Grant such other and further relief as the Court deems just and proper.

                                          RESPECTFULLY SUBMITTED,

                                          /s/ Robert S. Held
                                          Robert S. Held

Robert S. Held
20 N. Wacker Drive, Suite 1000
Chicago, Illinois 60606
Telephone: (708) 265-7222
Email: rheld@heldlawoffices.com

18