## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ROBERT HELD, | 1:25-cv-13066 |
| Plaintiff, | |
| v. | Hon. Judge Chang |
| VILLAGE OF BROADVIEW, an Illinois municipal corporation; KATRINA THOMPSON, in her official capacity as Mayor of the Village of Broadview; and THOMAS MILLS, in his official capacity as Chief of Police of the Village of Broadview, | |
| Defendants. | |

## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Robert Held, through counsel, respectfully requests that this Honorable Court grant a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), prohibiting Defendant from enforcing Executive Order No. 2025-01 ("the Order"), which broadly prohibits citizens from "protest[ing]" or "gather[ing]" at the ICE Processing Facility located at 1930 Beach Street, Broadview, Illinois, between the hours of 6:00 p.m. and 9:00 a.m.. In support thereof, Plaintiff states as follows:

### RELEVANT FACTS

On October 6, 2025, the Mayor of the Village of Broadview issued Executive Order No. 2025-01, prohibiting all protest, assembly, or expressive activity near the Immigration and Customs Enforcement ("ICE") Processing Facility in Broadview, Illinois, outside the hours of 9:00 a.m. to 6:00 p.m. Ex. 1, Order, § 1.

The Order applies to all persons and all forms of expression, regardless of size, volume, or conduct, and contains no exception for peaceful or non-disruptive activity. It further provides that the Mayor may rescind the restriction "should [she] deem the restriction no longer necessary," affording her unfettered discretion to determine when citizens may exercise their First Amendment rights. *Id.*

On October 6, 2025, Plaintiff Robert Held, a resident of Cook County, arrived at the designated protest area near the Broadview ICE Facility at approximately 7:40 a.m. to engage in peaceful protest activity. Ex. 2, Decl. of Held, ¶ 4. He stood quietly on the public sidewalk, expressing his opposition to federal immigration enforcement practices. *Id.* ¶ 5. At approximately 7:49 a.m., two Broadview police officers, including Lieutenant Florentino, approached Plaintiff and informed him that protesting before 9:00 a.m. violated the Executive Order. *Id.* ¶6. When Plaintiff calmly asserted his constitutional right to continue his peaceful protest, the officers issued him Citation No. VO 115933 for alleged "disorderly conduct" under Broadview Ordinance 15-10-1D, which provides as follows: "A person commits disorderly conduct when that person knowingly… fails to obey a lawful order of dispersal by a person known by him to be a police officer under circumstances which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm; or assembles for the purpose of using force or violence to disturb the public peace." *Id.* ¶¶ 7-11.

Plaintiff's peaceful demonstration was not causing "substantial harm, [] serious inconvenience, annoyance or alarm" and was not using "force or violence to disturb

the public peace." He neither obstructed traffic nor disturbed the peace. The sole basis for the "disorderly conduct" citation was that he was demonstrating outside of the hours set forth in the Order. *Id.* ¶¶ 13–14.

Plaintiff subsequently sought administrative relief by sending a Motion to Dismiss the citation to the Village of Broadview on October 13, 2025, arguing that Executive Order 2025-01 violates the First Amendment. Despite certified delivery of the motion and multiple follow-up letters and calls, the Village has never responded, scheduled a hearing, or otherwise addressed his motion. *Id.* ¶¶ 24–26.

Since receiving the citation, Plaintiff has hesitated to engage in further protest activity outside the 9:00 a.m. to 6:00 p.m. window due to the threat of arrest. *Id.* ¶ 16. He desires to continue engaging in peaceful protest during early-morning and evening hours when members of the public, facility personnel, and members of the media are sometimes present, but remains chilled from doing so. *Id.* ¶ 17. Other residents similarly wish to participate in early-morning or evening demonstrations, particularly those who work standard daytime hours, yet the Executive Order prevents them from exercising their First Amendment rights during the only times they are available. *Id.* ¶¶ 19–23.

The Village has offered no evidence of any specific threat to public safety or order that would justify the Executive Order's sweeping ban, which silences protest activity for 62.5 percent of each day. By criminalizing peaceful expression during most hours and vesting standardless discretion in the Mayor to determine when

speech may occur, the Order inflicts ongoing and irreparable harm to Plaintiff and others who wish to speak on matters of profound public concern.

## ARGUMENT

### I. Preliminary Injunction Standard

To be entitled to a preliminary injunction, a plaintiff must show (1) some likelihood of success on the merits; (2) that irreparable harm is likely if the injunction is not granted; (3) that the balance of equities and hardships tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If the moving party makes a threshold showing on the first two factors, a court must "proceed[] to a balancing analysis," weighing "the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays*, 974 F.3d at 818. "This balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in [her] favor, and vice versa." *Id*. As shown below, Plaintiff meets each of these elements.

### II. Plaintiff Is Likely to Succeed on the Merits of his First Amendment Claim

#### A. If Analyzed as a Content-Neutral 'Time, Place, and Manner' Regulation, the Executive Order Fails Intermediate Scrutiny

The Executive Order at issue restricts expressive activity in the most protected of public spaces, public sidewalks and rights-of-way adjacent to a government facility, and therefore requires close scrutiny under the First Amendment. *See*

*McCullen v. Coakley,* 573 U.S. 464, 476 (2014) ("[P]ublic streets and sidewalks…

occupy a special position in terms of First Amendment protection."). If the Order is

analyzed as a content-neutral "time, place, and manner" regulation, it can only

withstand constitutional scrutiny if it is narrowly tailored to serve a substantial

government interest and does not unreasonably limit alternative avenues of

expression. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)

(time, place and manner restrictions are permissible if they "are justified without

reference to the content of the regulated speech, … narrowly tailored to serve a

significant governmental interest, and … leave open ample alternative channels for

communication of the information.") As shown below, the Order fails both prongs of

that test.

1.  **The Executive Order Is Not Narrowly Tailored to Serve a Significant Governmental Interest**

Under *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), a content-neutral

restriction on speech or expression must be narrowly tailored to serve a significant

governmental interest. "Narrow tailoring" requires that the regulation not "burden

substantially more speech than is necessary to further the government's legitimate

interests." *Id*. at 799. The Executive Order fails this requirement in three main

respects.

First, the Mayor's blanket prohibition on protest activity between 6:00 p.m. and

9:00 a.m., covering 15 of every 24 hours, bears no relationship to any articulated

threat to public safety, order, or property posed by demonstrators.[1] The Village has

not identified evidence supporting the need for such a sweeping restriction on

demonstrators' First Amendment rights.

Second, the Order applies to activities that do not pose any threat to public

safety, peace, or order such as a single individual standing quietly in a public

forum. The citation issued to Plaintiff on October 6, 2025, when he was conducting a

quiet, solo demonstration at 7:40 a.m. illustrates the overbreadth of the Order.

Plaintiff's conduct posed no threat to safety, traffic, or property; and there was no

significant governmental interest served by prohibiting it. A regulation that

prohibits all expressive presence, regardless of the size of the demonstration or its

impact, cannot be said to be "narrowly tailored." *See Hodgkins v. Peterson*, 355 F.3d

1048, 1064 (7th Cir. 2004) (invalidating curfew statute that "restricts a minor's

access to any public forum during curfew hours" because it was broader than

necessary to further legitimate state interests); *NAACP v. Button*, 371 U.S. 415, 438

(1963) ("Broad prophylactic rules in the area of free expression are suspect. ...

Precision of regulation must be the touchstone in an area so closely touching our

most precious freedoms."); *Grayned v. City of Rockford*, 408 U.S. 104, 116-17, (1972)

("The nature of a place, the pattern of its normal activities, dictate the kinds of

regulations of time, place, and manner that are reasonable.")

---

[1]   The Order does not identify any problems posed by individuals demonstrating at the
ICE facility. The Order cites the "recent escalation of violence by ICE at the BPF, including,
but not limited to, needlessly deploying tear gas, pepper spray, mace, and rubber bullets at
individuals and reporters" as the reason for the restriction. Ex. 1, Order ¶ 4.

Third, even accepting as true that the Village has a legitimate interest in ensuring public safety and maintaining order near the ICE facility, those interests can readily be achieved through existing, more narrowly focused tools—*e.g.*, the enforcement of state and municipal laws prohibiting disorderly conduct, obstruction of traffic, trespass, and excessive noise. These targeted measures allow the Village to address genuine safety or disturbance concerns without silencing peaceful expression altogether. *See McCullen*, 573 U.S. at 485 ("Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency.") (citation omitted); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 (1993) (invalidating regulation where there was not a "reasonable fit" between the city's interests and its "selective prohibition" on certain methods of distributing printed materials).

The categorical ban on all protest activity for 15 hours each day "burden[s] substantially more speech than necessary to further the government's legitimate interests," *Ward*, 491 U.S. at 799, and therefore cannot be sustained.

### 2. The Executive Order Fails to Leave Open Ample Alternative Channels for Communication

Even when a time, place, or manner restriction is content-neutral and justified by a legitimate interest, it must still leave open "ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. The Supreme Court has made clear that an "alternative" is not "ample" if it deprives speakers of the ability

to reach their intended audience "at the time and place where they are most likely to be encountered." *McCullen*, 573 U.S. at 489.

There are two ways that the Order fails to leave open adequate alternatives. First, it bars protests during the hours when demonstrators are most likely to be able to deliver their message to its intended audience. ICE facility staff and detainee transport operations are active during early mornings and later evenings. It is not an adequate alternative to allow demonstration when the intended audience is not present.

Second, the Order bars all demonstrations during the hours when citizens who work standard business hours can actually participate. By limiting protest to a narrow nine-hour window during the workday, the Village effectively eliminates the ability of many citizens to engage in weekday expressive activity at all.

This is not a case where some meaningful alternative forum remains available; the restriction cuts off the most effective avenue of communication available to those who wish to protest federal immigration policy. *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994) (striking down ordinance that foreclosed residential signs because alternatives were not truly adequate).

The right to engage in expressive activity when and where it matters is an essential element of the First Amendment. Here, the prohibition on early-morning and evening protests removes precisely those times when speech is most effective, thereby violating the constitutional requirement of adequate alternative channels.

For these reasons, Plaintiff has a likelihood of success on his claim that the Order violates the First Amendment if analyzed as a content-neutral time, place and manner restriction.

### B. The Executive Order Vests Unconstitutional Standardless Discretion in a Government Official

The Executive Order explicitly reserves to the Mayor the power to rescind the restriction "should [she] deem the restriction no longer necessary." Ex. 1, Order, § 1. It provides no standards, criteria, or procedural safeguards to guide or review that determination. This unfettered discretion is independently fatal *under Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992), where the Supreme Court invalidated an ordinance allowing an administrator to vary fees for public demonstrations based on subjective assessments of cost and security needs. The Court held that "[a] government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation.'" *Id*. at 130 (citation omitted).

Like the ordinance in *Forsyth County*, the Order leaves the question of when citizens may exercise their First Amendment rights up to the unreviewable judgment of a single executive official. The lack of objective criteria creates a serious risk of viewpoint discrimination, particularly given that the Order was issued contemporaneously with protests critical of government policy. The Supreme Court has repeatedly emphasized that such "unbridled discretion in the hands of a government official" renders a regulation facially unconstitutional. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

In conclusion, because the Order (1) is not narrowly tailored to any significant governmental interest, (2) eliminates ample alternative channels for communication, and (3) vests standardless discretion in the Mayor, it is unconstitutional both on its face and as applied to Plaintiff. Plaintiff therefore has a strong likelihood of success on the merits of his First Amendment claim.

## III.  Plaintiff Is Suffering Irreparable Harm

Plaintiff is suffering irreparable harm and will continue to suffer irreparable harm unless an injunction is granted. For 15 hours each day, he is forbidden from engaging in First Amendment protective activities in Broadview under threat of arrest for violation of the Order.

Harm is irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) (*quoting Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008)). In the First Amendment context, courts have consistently held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012) (a plaintiff who is prohibited from engaging in First Amendment protected activity successfully demonstrates irreparable injury). When deprivation of First Amendment rights is alleged, "most courts hold that no further showing of irreparable injury is necessary." *Ezell v. City of Chicago*, 651 F. 3d 684 (7th Cir. 2011) (*quoting* Alan Wright *et al.*, Federal

Practice and Procedure § 2948.1 (2d ed. 1995)); *see also Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998) ("[Plaintiff] lacks an adequate remedy at law as any post-election remedy would not compensate it for the loss of the freedom of speech.")

## IV. The Public Interest Favors Issuance of an Injunction

Turning to the final factor in the preliminary injunction analysis, the balance of harms tilts strongly in Plaintiff's favor. As the Seventh Circuit has explained, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *see also Alvarez*, 679 F.3d at 589-90 ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional.")

Nor would an injunction harm the Defendant, who has no legitimate interest in infringing upon protestors' rights. *Joelner v. Vill. Of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). If an injunction prohibiting enforcement of the Order is granted, the Village of Broadview would remain free to maintain public safety and order around the ICE facility through constitutionally permissible means such as enforcement of state laws and local ordinances that prohibit obstruction of the public way.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant a preliminary injunction prohibiting Defendants from continuing to enforce Executive Order No. 2025-01 and any other relief the Court deems appropriate.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiff*


Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net